1

2

3

4

5

6                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                 AT SEATTLE

8  VICTOR MERCADO GONZALEZ,

9                              Petitioner,            Case No. C15-1778-MJP-BAT

10          v.                                        **REPORT AND
                                                      RECOMMENDATON**
11  NATHALIE R. ASHER, et al.,

12                             Respondents.

13                **INTRODUCTION AND RELEVANT BACKGROUND**

14          Victor Mercado Gonzalez ("Mr. Mercado"), a native and citizen of Mexico, has been

15  detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest Detention

16  Center in Tacoma, Washington, since August 13, 2015, under a reinstated order of removal.[1]

17  *See* Dkt. 6-2 at 2.  An asylum officer found Mr. Mercado had a reasonable fear of return to

18  Mexico, and he applied for withholding of removal.  *Id.* at 2-3.  A merits hearing for the

19  withholding-only proceedings is scheduled for March 4, 2016.  *Id.* at 3.  During his detention,

20  Mr. Mercado has not received an individualized bond hearing before an Immigration Judge

21  ("IJ").  *See id.*

22          Proceeding through counsel, Mr. Mercado filed the instant 28 U.S.C. § 2241 habeas

23  _____
[1] Mr. Mercado was originally ordered removed on May 5, 1992, and has been removed from the United States to
Mexico three times.  Dkt. 6-2 at 1-2.

REPORT AND RECOMMENDATON- 1

petition, seeking immediate release from immigration detention or a bond hearing.  Dkt. 1.

Respondents have moved to dismiss, arguing Mr. Mercado's detention is statutorily authorized

and he is not entitled to a bond hearing.  Dkt. 6.  Mr. Mercado has opposed the motion, Dkt. 11,

and respondents have filed a reply, Dkt. 12.

Having considered the parties' submissions and the governing law, the Court

recommends that both respondents' motion to dismiss and Mr. Mercado's habeas petition be

**GRANTED** in part and **DENIED** in part.  Mr. Mercado is not entitled to release, but he should

be provided an individualized bond hearing before an IJ where the government bears the burden

of establishing by clear and convincing evidence that he presents a flight risk or a danger to the

community.  Respondents should be ordered to provide Mr. Mercado with such a bond hearing

within 14 days of the Order on this Report and Recommendation.

## DISCUSSION

**A.      Statutory framework**

**1.      Reinstatement and withholding-only proceedings**

If an alien who is removed pursuant to a removal order subsequently reenters the United

States illegally—like Mr. Mercado—the Department of Homeland Security ("DHS") may

reinstate the original removal order.[2]  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th

Cir. 2007) (en banc); 8 C.F.R. § 241.8.  When DHS reinstates a removal order, "the prior order

of removal is reinstated from its original date and is not subject to being reopened or reviewed,

the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be

---

[2] To reinstate a removal order, DHS must comply with the procedures set forth in 8 C.F.R. § 241.8(a) and (b).
*Oritz-Alfaro v. Holder*, 649 F.3d 955, 956 (9th Cir. 2012).  These procedures include obtaining the prior order
related to the alien, confirming that the alien is the same alien who was previously removed, and confirming that the
alien unlawfully reentered the United States.  8 C.F.R. § 241.8(a).  An immigration officer must then give the alien
written notice of the determination that the alien is subject to removal and provide him with an opportunity to make
a statement contesting the determination.  8 C.F.R. § 241.8(b).  If these requirements are met, 8 C.F.R. § 241.8(c)
provides that the alien "shall be removed" under the prior removal order.

REPORT AND RECOMMENDATON- 2

1   removed under the prior order at any time after the reentry."[3]  8 U.S.C. § 1231(a)(5).

2           An alien ordered removed pursuant to a reinstated removal order, however, may not be

3   removed "to a country if [DHS] decides that the alien's life or freedom would be threatened in

4   that country because of the alien's race, religion, nationality, membership in a particular social

5   group, or political opinion."  8 U.S.C. § 1231(a)(5).  To reflect this prohibition, the regulation

6   governing reinstatement of removal orders "creates an exception by which an alien who asserts

7   'a fear of returning to the country designated' in his reinstated removal order is 'immediately'

8   referred to an asylum officer who must determine if the alien has a reasonable fear of

9   persecution or torture in accordance with 8 C.F.R. § 208.31."  *Oritz-Alfaro v. Holder*, 649 F.3d

10  955, 956 (9th Cir. 2012) (quoting 8 C.F.R. § 241.8(e)).  If the asylum officer finds that the alien

11  has not established a reasonable fear of persecution or torture, and an IJ affirms this

12  determination, the matter is returned to DHS for execution of the reinstated order of removal

13  without the opportunity to appeal to the Board of Immigration Appeals ("BIA").  8 C.F.R. §

14  208.31(g).  On the other hand, if the asylum officer makes a positive reasonable fear

15  determination, as in Mr. Mercado's case, the matter is referred to an IJ "for consideration of the

16  request for withholding of removal only."  8 C.F.R. § 208.31(e).  When an IJ grants withholding

17  of removal, the alien may not be removed to the country designated in the removal order but

18  may be removed to an alternate country.  *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f);

19  *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004).  An IJ's decision to grant or deny

20  withholding of removal may be appealed to the BIA.  8 C.F.R. § 208.31(g)(2)(ii).

21

22  [3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L.
    No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the

23  Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role
    in administering immigration courts and the Board of Immigration Appeals.  *See Hernandez v. Ashcroft*, 345 F.3d
    824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATON- 3

1    While withholding-only proceedings are pending before an IJ or the BIA, DHS cannot

2    execute a reinstated removal order.  *See Ortiz-Alfaro*, 694 F.3d at 957; 8 U.S.C. § 1231(b)(3).

3         **2.      Immigration detention**

4         There are two primary statutes that govern immigration detention, 8 U.S.C. § 1226(a)

5    and 8 U.S.C. § 1231(a).  Section 1226(a) provides for discretionary detention "pending a

6    decision on whether the alien is to be removed from the United States," and authorizes DHS to

7    release aliens on bond.  8 U.S.C. § 1226(a).  Section 1231(a) governs "detention, release, and

8    removal of aliens ordered removed."  8 U.S.C. § 1231(a).  Pursuant to § 1231(a), DHS is

9    required to detain an alien during the "removal period."  8 U.S.C. § 1231(a)(2).  The removal

10   period is the 90-day period that begins on the latest of the following:  (i) the date the order of

11   removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a

12   court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the

13   alien is detained or confined (except under an immigration process), the date the alien is

14   released from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  Following the expiration of

15   the removal period, DHS has the discretionary authority to detain certain aliens or to release

16   them under an order of supervision.  8 U.S.C. § 1231(a)(6).  The statutory basis for an alien's

17   detention shifts from § 1226(a) to § 1231(a) once the removal period has been triggered.

18   **B.      Mr. Mercado is entitled to a bond hearing**

19        Whether an alien is detained pursuant to § 1226 or § 1231 "can affect whether his

20   detention is mandatory or discretionary, as well as the kind of review process available to him if

21   he wishes to contest the necessity of his detention."  *Prieto-Romero v. Clark*, 534 F.3d 1053,

22   1057 (9th Cir. 2008).  The parties vigorously dispute whether Mr. Mercado's detention is

23   governed by § 1226(a) or § 1231(a).  *See* Dkts. 1, 6, 7, 8.  Mr. Mercado argues that § 1226(a)

REPORT AND RECOMMENDATON- 4

applies because his application for withholding of removal has not been adjudicated and thus he

is not subject to a final order of removal.  Respondents counter that § 1231 governs because Mr.

Mercado's reinstated removal order was final at the time it was reinstated.  The Ninth Circuit has

not yet determined which statutory provision applies when an alien is subject to a reinstated

removal order but has a pending application for withholding of removal, and the district courts

that have weighed in are divided.  Indeed, there is a split of authority in the Western District of

Washington.  *Compare Mendoza v. Asher*, No. C14-811-JCC, 2014 WL 8397145 (W.D. Wash.

Sept. 16, 2014) (§ 1226(a) governs), *with Giron-Castro v. Asher*, No. C14-867-JLR, 2014 WL

8397147 (W.D. Wash. Oct. 2, 2014) (§ 1231 governs).

      In this case, however, the Court need not determine the statutory basis for Mr. Mercado's

detention because he is entitled to a bond hearing under either § 1226(a) or § 1231(a).  Mr.

Mercado has been detained by ICE for more than six months and his detention is likely to

continue until his withholding-only proceedings are concluded, which may involve an appeal to

the BIA.  As such, his detention is "prolonged."  *See Diouf v. Napolitano*, 634 F.3d 1081, 1092

n.13 (9th Cir. 2011) ("*Diouf II*") ("As a general matter, detention is prolonged when it has lasted

six months and is expected to continue more than minimally beyond six months.").

      The Ninth Circuit has addressed the due process requirements for prolonged detentions

in the context of both § 1226(a) and § 1231(a)(6).  In *Casas-Castrillon v. Department of*

*Homeland Security*, the court held that aliens detained under § 1226(a) for a prolonged period of

time are entitled to a bond hearing and release on bond unless the government proves that they

are a flight risk or a danger to the community.  535 F.3d 942, 951 (9th Cir. 2008); *see also*

*Rodriguez v. Robbins*, 804 F.3d 1060, 1084 (9th Cir. 2015).  "Because the prolonged detention

of an alien without an individualized determination of his dangerousness or flight risk would be

REPORT AND RECOMMENDATON- 5

'constitutionally doubtful,'" the Ninth Circuit concluded "that § 1226(a) must be construed as *requiring* [DHS] to provide the alien with such a hearing." *Casas-Castrillon*, 535 F.3d at 951 (citation omitted, emphasis in original).

      In *Diouf II*, the court extended these requirements to aliens detained under § 1231(a)(6), holding "that an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community."  634 F.3d at 1082.  Specifically, the court held that the government must provide a bond hearing before an IJ to aliens who are denied release in their six-month DHS custody reviews and whose release or removal is not imminent.  *Id.* at 1091-92 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound.  Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial.").

      In reaching its holding, the Ninth Circuit rejected the government's argument that the "important interest" at stake—freedom from prolonged detention—was less for aliens detained while seeking collateral judicial review of administratively final orders of removal as compared to those seeking direct review.  *Id.* at 1087.  The Ninth Circuit also emphasized that while the government's interest in "ensuring that aliens are available for removal if their legal challenges do not succeed" may be "marginally greater" with respect to aliens detained under § 1231(a)(6) than those detained under § 1226(a), this interest was more appropriately considered by an IJ at an individualized bond hearing, rather than by "categorically denying to § 1231(a)(6) detainees the right to a bond hearing that § 1226(a) detainees already enjoy."  *Id.* at 1087-88.

      Under either *Casas-Castrillon* or *Diouf II*, Mr. Mercado is entitled to a bond hearing because he has been detained for more than six months, and his removal or release is not

REPORT AND RECOMMENDATON- 6

1   imminent.  Respondents nevertheless argue the Court should not "extend" *Diouf II* to Mr.

2   Mercado because there are three major distinctions between Diouf and Mr. Mercado.  As

3   discussed below, respondents' arguments are not persuasive.

4       First, respondents argue this case is distinguishable from *Diouf II* because Diouf was

5   ordered removed after overstaying his student visa and could collaterally challenge the removal

6   order through an application to reopen the removal proceedings, whereas Mr. Mercado's prior

7   order of removal has been reinstated and he cannot challenge the underlying order.  The Ninth

8   Circuit, however, has made clear that "[r]egardless of the stage of the proceedings, the same

9   important interest is at stake—freedom from prolonged detention."  *Diouf II*, 634 F.3d at 1087.

10      Respondents next assert that Mr. Mercado's case is distinguishable from *Diouf II*

11  because Diouf had never been previously removed from the United States, while Mr. Mercado

12  has been removed before.  According to respondents:

13          The government's interest in detaining aliens previously removed and who have
            illegally reentered the United States presents qualitatively different concerns
14          than those addressed in *Diouf II*.  *See Diouf II*, 634 F.3d at 1088 ("It is far from
            certain that § 1231(a)(6) detainees such as Diouf will be removed.").  In the
15          absence of careful consideration of the government's interest in the continued
            detention of previously removed aliens who have illegally reentered the United
16          States, a sweeping extension of *Diouf II*'s requirement of an individualized bond
            hearing for aliens being held in custody pursuant to 8 U.S.C. § 1231(a)(6) for
17          more than 180 days after reinstatement of their prior removal order is
            unwarranted.
18
19  Dkt. 6 at 16.  This argument is not well taken.  The fact that it was uncertain whether Diouf

20  would be removed was only one of four reasons the Ninth Circuit gave for finding that the

21  government's interest in detaining § 1231(a)(6) detainees was not substantial enough to justify

22  denying a bond hearing.  The court also found that the government has an interest in ensuring

23  that all aliens are available for removal, detention is permitted if it is found that the alien poses a

    flight risk, and the petitions for review may take years to resolve.  *Diouf II*, 634 F.3d at 1088.

1   These remaining reasons apply with full force to Mr. Mercado, and provide ample justification

2   for treating § 1231(a)(6) detainees subject to a reinstated order of removal the same way other §

3   1231(a)(6) detainees are treated.

4       Finally, respondents contend that unlike Diouf's removal order, Mr. Mercado's removal

5   order is not being judicially reviewed.  Yet while Mr. Mercado's removal order itself is not

6   being reviewed, he is entitled to seek Ninth Circuit review of the BIA's final determination

7   regarding his withholding of removal application.  Thus the Ninth Circuit's central concern in

8   *Diouf II*—prolonged detention while petitions for review are resolved—is equally applicable

9   here.

10      Assuming Mr. Mercado is detained under § 1231(a)(6), the Court need not "extend"

11  *Diouf II* to find that it governs Mr. Mercado's case.  The Ninth Circuit limited its holding to

12  aliens detained under § 1231(a)(6)—not to "certain aliens detained under § 1231(a)(6)," as

13  respondents suggest.  *See* Dkt. 6 at 14.  Although there are some differences between Mr.

14  Mercado and Diouf, none of those differences undermine the Ninth Circuit's ultimate concern

15  that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would

16  raise 'serious constitutional concerns.'"  *Diouf II*, 634 F.3d at 1086 (quoting *Casas-Castrillon*,

17  535 F.3d at 950).  Mr. Mercado's current prolonged detention without the opportunity for a

18  hearing before an IJ raises such constitutional concerns.  Accordingly, he is entitled to a bond

19  hearing at which the government must establish that he is a flight risk or a danger to the

20  community.

21  **C.    Mr. Mercado is not entitled to an order of release**

22      In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits an

23  alien's detention to a period reasonably necessary to bring about that alien's removal from the

REPORT AND RECOMMENDATON- 8

United States, and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). Under

*Zadvydas*, "[a]n alien is entitled to habeas relief after a presumptively reasonable six-month

period of detention under § 1231(a)(6) only upon demonstration that the detention is

'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future.'" *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir.

2008) ("*Diouf I*") (quoting *Zadvydas*, 533 U.S. at 701). To establish that there is no significant

likelihood of removal in the reasonably foreseeable future, an alien must "show that he would be

unremovable even if the government defeated his petition for review." *Id.* (citing *Prieto-*

*Romero*, 534 F.3d at 1063). Detention becomes indefinite if, for example, the country

designated in the removal order refuses to accept the alien, or if removal is barred by the laws of

this country. *Id.* "That the detention does not have a certain end date does not change the

analysis." *Id.* (citing *Prieto-Romero*, 534 F.3d at 1063, and *Casas-Castrillon*, 535 F.3d at 948-

49 (concluding that an alien's detention was not unauthorized by statute on the basis of the

length of his nearly seven-year detention because nothing would prevent his removal if he were

ultimately unsuccessful in his then-pending petition for review)).

In this case, there is no evidence that if Mr. Mercado's application for withholding of

removal is denied, Mexico will not accept him. Indeed, Mexico previously has issued travel

documents to effectuate Mr. Mercado's removal on three previous occasions. Consequently, Mr.

Mercado fails to demonstrate that his detention is indefinite under *Zadvydas*, and thus he is not

entitled to an order of release.

## CONCLUSION AND RIGHT TO OBJECT

For the foregoing reasons, the Court recommends that both respondents' motion to

dismiss, Dkt. 6, and Mr. Mercado's habeas petition, Dkt. 1, be **GRANTED** in part and **DENIED**

in part.  Mr. Mercado is not entitled to an order of release, but he should be afforded a bond hearing pursuant to *Casas-Castrillon* and *Diouf II*.  Respondents should be ordered to provide Mr. Mercado with such a bond hearing within 14 days of the Order on this Report and Recommendation.

This Report and Recommendation is not an appealable order.  Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.  Objections, however, may be filed and served upon all parties no later than **March 1, 2016.**  The Clerk should note the matter for **March 4, 2016**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed 10 pages.  The failure to timely object may affect the right to appeal.

DATED this 16th day of February, 2016.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATON- 10